We have four argued cases this morning, one a veterans case and three patent cases, one of which is from the PTAB and two from the district court. Our first case is George Lacoste Sr. v. the Secretary of Veterans Affairs, 2018-16-70, Mr. Attig. May it please the court. Mr. Lacoste acknowledges that he must demonstrate intent to apply for benefits. That does not mean, however, that he must demonstrate specific intent to claim each medical condition within that application. That is the legal standard that the veterans court used and it is the wrong legal standard. We know it's the wrong legal standard because this court, dating all the way back to Hodge and Schroeder through Roberson, Moody, Semraj. Can I understand what you mean by the specific intent? I guess there's a range. Do you think it's sufficient that he just say I intend benefits or do you think that he needs to have any degree of specificity identifying the part of the body, the nature of the injury. I mean maybe he could say I intend to seek benefits for everything demonstrated in my but I guess I don't understand your line between intent and specific intent with respect to the particular injury or disease that he's going to seek benefits for. Yes, Your Honor. We believe that intent lives in one specific part of a claim and that's the intent to show an application for general benefits. And I think that's memorialized very well in the Secretary's own regulation, 3.155B, where it describes intent as seeking a general benefit and no need to claim a specific condition. The concept of specificity. And so which regulation, is that the post-2015 regulation or? Yes, Your Honor. Is that what we're dealing with or are we dealing with the pre-2015? We're dealing with the pre-2015. That language wasn't in there, right? That is correct, Your Honor. I believe it was not in the pre. I'm just using that as an example to show that even the Secretary acknowledges that the intent goes to the application for I want to focus, I think, on this same thing, too. So 3.155A says you must indicate and specify or identify the benefits sought. That's the language, right? And that might just mean disability or death compensation or pension or dependency. Nothing further. It might mean, by benefit, only the class of benefits sought, not anything at all about the basis within the disability category. And I guess in preparing for this argument, I've been trying to get a grip on whether that is the correct reading or not. It's clearly not been the reading in the Veterans Court for that. Your Honor, this Court has not addressed that. This concept of intent to specify the specific medical condition drives back to Brannon in 1988 out of the Veterans Court, 1998 out of the Veterans Court. This Court has cited to Brannon two times. And one of those times was in McPhee, where it referenced it in what I believe was dicta. But also in a reason— Well, it didn't—as I read McPhee, it says the Veterans Court addressed 3.155A. It also addressed 3.157. We are not deciding the 3.155 because the veteran is not appealing that ruling here. All we're saying is that it was perfectly right for the Veterans Court to turn to 3.157. And 3.157 does actually have medical condition language in it, unlike 3.155. That is correct, Your Honor. And our reading of McPhee is the same as that, is that the Court did not reach 3.155 in terms of the specific intent versus the scope of the claim once it filed an application for benefits aside. And I think this Court's standard—to return to your original question, Judge Moore—this Court's standard that it elicited dating back to Hodge and Schroeder, Roberson, Moody, Samraj, puts the onus on the Board to explain what's reasonably raised by the record. And I think that if we'd start talking about— Well, but those—I guess this is now, I guess, pushing back a little bit in the other direction. Those cases all—I mean, sorry, none of them say, if you file an application and say, I want benefits, but don't point to anything, including not even pointing to a particular medical record, that it is enough if the RO finds in the medical record a reference to an underlying condition. We haven't gone that far. And I'm not asking the Court to go that far. What we're asking is to require the Board to examine what's reasonably raised by the record, and not just limit it to what the veteran intends in terms of medical conditions. Because you can have a variety of scenarios. You can have a scenario that Your Honor just described. You can have another scenario where a veteran just sends in medical records of PTSD without any indication to the regional office or to the Board what he wants or she wants done with those. Is the veteran seeking a non-service-connected disability pension? Is the veteran seeking service-connected disability compensation? Are they seeking—is it private records that they're seeking reimbursement? I think that that's what, ultimately, when I read cases like Robertson and Semraj and Moody, is it's saying to the Board, consider all this. Look at this. Make a decision as to what is reasonably raised by the record. And in the example Your Honor cited, where all you have is just something sent in that doesn't specify a specific class of benefits, or in the example that I gave for it. But how does a medical—how is a mental condition reasonably raised by this record? By this particular record, Your Honor, we believe that it was raised in the service records which related the ulcer and the mental health condition. Now, we're not specifically coming to this Court and asking this Court to decide what the scope of that 1972 claim was. We're asking the Court to decide the legal standard by which the Board should have assessed that. And we're asking this Court to tell the Board that intent to identify—intent to acclaim a medical condition, specifically mental health, is not part—the exclusive part of that reasonably raised assessment. Certainly, the Board could consider that as a component, but I don't think it can do that to the—by ignoring the rest of the record that suggests that there may be a mundane procedural question. So back in 1972, Lacoste files his handwritten application. He doesn't himself submit medical records, right? Correct. And so the VA goes and gets—these are all Air Force medical treatment records. They're not VA treatment because, you know, he was just out of the military and all of his treatment was in service. Correct. And he would then have seen these medical records in—I mean, would he be getting copies or only the RO or not? I would say as a general rule that the veteran does not get those copies. In my practical experience, and I know the Court can't rely on this, but in my practical experience, that information is not shared. And in fact, the Veterans Court has recently decided that the duty to assist does not require the VA to produce documents related to the claim. Do we make anything of—I guess it's a fairly striking fact that he applies for benefits in, I guess, May of 1972. He gets, you know, a decision. A decision that says, yeah, your ulcer is connected to service, but zero disability. And then he doesn't appeal. Do we make anything of the fact that at that point and for the next three and a half decades, he never says, goodness, I have this, you know, psychiatric-related condition? Isn't it somehow telling that he didn't seem to think so anywhere near the time of the original application? Certainly, Your Honor, I would have preferred if Mr. Lacoste had appealed that. The fact that he didn't, though, I don't think says—it could say a number of things. As you can see from the records, he had some significant mental health issues when he left service. He had been treated, inpatient, psychiatric treatment in service. He had been treated with Librium. He had been was at the time he filed his claim or at the time he received that decision. He may never have received it. He certainly may never have known what to do with it, or he may have not been in a state of mind to be able to deal with it at that time. He ultimately did get service connection for a mood disorder, right? In 2010, it was service-connected for the mood disorder, and that decision specifically related it back to those medical records in 1972, which is why we argue that that's the decision that adjudicated that 1972 claim. Well, that was the date that he applied for Parkinson's disease, right? He did apply for Parkinson's in 2010. And that's when they gave them the mood disorder service connection. Specifically, Your Honor, he applied in 2010, and they denied Parkinson's in 2011. He filed a notice of disagreement challenging the denial of Parkinson's, but also asserting that the Board had, or I'm sorry, that the Regional Office had failed to consider his mood disorder claim from 1972 and the component of his Parkinson's that was depression. He had two mental health conditions going on at this time. He had the one that the mood disorder that relates back to service, and he had the depression that was secondary to the Parkinson's. And so he had to appeal both of those because both of those were implicitly denied in the 2010 ratings decision. And it was in 2013 that the agency came back and granted service connection for the mood disorder at 100% disabling based on those 1972 service medical records. He was later service connected for Parkinson's in 2015, and a medical opinion looked to see if there was any way to separate out the symptoms from the two medical conditions, and they found that they could not. The difficulty, it seems to me, is if you look at the claim filed in 72, which is on page 420 of the appendix, the question it asks is nature of sickness, disease, or injuries for which claim is made and date of each. And he lists one, two, three, four, five, six, seven, six or seven separate things. His left foot cyst, his ulcer, I'm not going to go through all of them, but none of them relate to anything psychiatric. None of them relate to a depression or a mood disorder or any sort of thing. So the form back then, the application for compensation or pension had this line, which says you need to hear list any sickness or disease or injury for which you are seeking a claim. He could have said, I am seeking a claim for all injuries or benefits listed in my VA medical records. And maybe that would have been a better scenario for you because the medical records did in fact talk about a mood disorder, but he identified with specificity what he was seeking the claim for, and it doesn't include any psychiatric disorders. So how does that evidence intent to claim benefits for psychiatric disorders? That's ultimately our concern is that we don't think that Mr. Lacoste had to show intent to claim a mental health condition in 1972. He only had to seek an intent for the general class of benefits. But he didn't seek an intent for the general class of benefits. He sought benefits for his left foot cyst, for his ulcer. None of those are the general class of benefits, which include a psychiatric mood disorder. Those are very specific. In fact, I'm suggesting that his level of specificity may be what dooms him here. He was so specific. He told the VA, my left foot is the problem. My ulcer is the problem. And due to that, I don't see how I can now fault the VA for failing to have considered this a claim for mental health benefits, which is what you've asked me to do. The first thing I would say, two things to that, Your Honors. The first thing I would say is when I'm talking about a general class of benefits, what I'm talking about is disability compensation versus a non-service connected pension versus a request for reimbursement versus service connection of cause of death or IU, the different classes of benefits that the VA monitors and compensates for. Secondly, we don't know exactly what Mr. Lacoste intended or knew at that time in terms of what his condition was. For example, he mentioned ulcer. And because throughout service, his ulcer was treated at the same time as his mental health condition, was treated with the same medications, Librium, Valium, was noted as a physio-psychological gut reaction. Certainly when he, as a layman, is saying to the agency, service connect my ulcer, he might well have been thinking the ulcer and the mental health condition that caused it. Well, if that were true, that would be a question of fact that we don't have the authority to review. If the government read ulcer and understood that to only be his stomach condition as opposed to his stomach condition and his mental health, that would be a question of fact or an application of law to fact. That wouldn't be a question of how do I define claim under the statute or regulation. So even if you're correct, that would not be within the authority of this court to review. And that's, we're not asking the court to make that review. What we're asking this court to look at is the way that the board determined what was the scope. It looked and it said intent. Counsel, we're well into your rebuttal time. Perhaps we should hear from the government now. We'll give you two minutes for us to speak. May it please the court. We ask that this court either dismiss Mr. Lacoste's appeal for lack of jurisdiction or affirm the determination of the veterans court. Starting with the jurisdictional issues, Mr. Lacoste attempts to overcome the jurisdictional bar by claiming that the veterans court and the board required a specific intent on the part of Mr. Lacoste to apply for a mental health benefit. But that is not the case. As we stated in our mention multiple times throughout its decision, for example, at appendix pages 90, 95, 96, that the identification need not be specific. Right, but his position today is forget about the word specific. You don't actually need an indication of condition particular intent. Yes, your honor. That's a legal question about what one of the regulations, I guess the only one that's relied on here, 155A means. Your honor, to go back a little bit in his briefs, the argument that Mr. Lacoste raised was that they wrongly applied a specific intent standard to the extent that he argues that today they shouldn't have had to show any intent at all. But just assume with me, this is to me not actually at all helpful in getting at what is very troubling to me, which is figuring out what regulation is the governing regulation and what the regulation means. Can I ask you this question first? Put aside 155A, okay? Was 159A in existence in 1972 in the form it is now? Because 159A is about the actual application and that's what we're talking about. What did this application mean? Was 159 in existence with its language about what a substantially complete application means, which unlike 155A refers to the benefit that was in effect in 1972, although I believe it's been amended a couple times since then. Well, the whole thing got changed in 2015. Relevant to this appeal. And the board, in fact, did spend more than... But the Veterans Court did not rely on that and you're not relying on it. The Veterans Court did not speak about 3.159A and the majority of our briefs in responding to Mr. 159. At all? We may have cited it in passing. Well, here's my trouble, just so that you understand what I've been struggling with. I think that there's this threshold legal question about 155A all by itself. Does it require anything at all about the basis for a request for disability compensation? It sure looks on its face like all it is saying is, just on its face textually, tell us whether you want a pension under 3.3, compensation under 3.4, or dependency benefits under 3.5. Your Honor, read by the plain language, it does not speak about specific conditions or body parts. But as Your Honor said, 3.159 does mention the medical conditions... Well, now we're talking... If we were talking about 3.159, then I think it's undeniable there's language in there about the benefits conditions, but I'm not sure what to do when the entire case is presented under 155A. And tell me if I'm wrong, but have we actually had a case in which we've said your claim was not specific enough and rejected it on the ground that 155A requires some kind of condition particularity? I know, as far as I remember from your brief, the only one that you rely on is McPhee, and McPhee did not reach the 155A issue. Then you turn to Veterans Court decisions, which as your counterpart indicates, has at least since Brannon in 1998, so helped. But I'm not sure we ever had, and I haven't seen from you, either a statutory or a regulatory analysis telling us why that's right. Your Honor, we did cite McPhee, and although McPhee didn't specifically apply to 3.155A, I think the holding in McPhee is still germane to this appeal. Moreover, there have been... That's too fast. The only thing what McPhee actually ruled on was 157, and 157 actually has language in it about the specific disability. So what it says about that language doesn't imply what 155A, which has no such language in it, means. Yes, Your Honor. However, and I understand that this is a Veterans Court decision. The Veterans Court in Brukowski did talk about the language of identifying a body part or a symptom, and although this court has never specifically affirmed Brukowski, it has relied on the principles in Brukowski, sometimes in the cases of finding that there is no jurisdiction, because these are factual inquiries. But I believe in the Pacheco case and in Veterans Justice Group, the principles that the Veterans Court relied upon in the Brukowski case were essentially affirmed by this court. Pacheco? Pacheco is not a precedential case. Oh, okay. Put that aside then. What's the other one? Veterans Justice Group. Is that the one in which we upheld the change in regulations? I believe so, although it does not, again, it's not specifically about 3.155A. It did affirm the principles that... Well, I guess I think I've probably already made clear, but let me just summarize. It is very strange to me that there is this regulatory language that you all have not addressed, either by relating it to anything else in the regulations, like 3.1 or 3.3 or 3.4 or 3.5 or anything in the statute, to say, here's why this language means something other than, tell us the type of benefit you want, namely pension versus compensation. Well, Your Honor, I believe our brief and the Veterans Court decision does refer to CFR 3.1, which discusses just the theory of a claim in general. And that claim is actually based in statutory authority. For example, 38 U.S.C. 5107 basically says that, except as otherwise provided, a claimant has responsibility to present and support a claim for benefits. And then 3.1 essentially talks about what a claim application means. And in this case, it's just the plain fact, as the board found and the Veterans Court upheld, that Mr. Lacoste did not present a claim for a mental or mood disorder. As Your Honor, Judge Moore mentioned, he presented a claim for five very specific physical conditions, none of which the board found encompassed a psychiatric condition. What if in that box he said, I am seeking a claim for benefits for all injuries and diseases reflected in my medical records? Your Honor, that to me is similar to the Sellers decision, which I believe was decided by the Veterans Court recently and in which the government has docketed a notice of appeal. So that issue, I believe, is in front of this court and in Sellers right now. However... And your brief is due in two weeks, right? I hope you have a better discussion about McPhee and primary sources in that brief. Your Honor, I'm not personally assigned to the Sellers case. I met you in a much more institutional sense. Speak of what exactly is happening in Sellers. However, we would disagree that even a general statement of intent to seek benefits for anything, everything that occurred in service would be enough for then just any mention in the medical record to bring the claim within the scope, to bring those references in the medical records within the scope of the claim. But again, here there is not even that. Here there were five specific claims. Rosacea, gonorrhea, ulcer, foot cyst, some very specific conditions and none of them encompass the psychiatric condition. And the board specifically found that. I think it's illustrative, in fact, in the board's decision that... But the question of law that is in front of us, quite clearly, it seems to me, is what do the regulations in the statute require of a veteran when making allegations for purposes of benefits? And so what I'm trying to figure out is what do those regulations require? What regulation is it that you think governs clearly requiring this level of specificity? Well, Your Honor, again, as the board held, there is not a high level of specificity required. There just needs to be some description or identification of a body part, even in layman's language. Oh, then why wouldn't... Couldn't you then say for all of the injuries and diseases listed in my attached medical records? I don't understand why that wouldn't suffice if there doesn't have to be a high level of specificity. Well, Your Honor, as I think the Veterans Court has held, although I'm not sure this court has, the regulations don't require the VA to go through the medical records on, I think they have termed it an unguided safari and conjure up conditions that the applicant is not claiming for. And indeed, as a policy matter, I understand that the process is non-adversarial and the VA is supposed to sympathetically and broadly construe the claims by the veteran, but there still has to be a claim saying otherwise would essentially contravene the statutory intent and make it an unworkable burden for the VA to have to comb through every applicant's medical records based upon just a general statement that he's looking for disability benefits for anything that's noted in his medical record to figure out through his medical record every single thing that this veteran has potentially been diagnosed. So let me get this straight. Your concern is not with a veteran who has been found to have a mental health disorder that absolutely stemmed from his 1972 service and that has rendered him 100% disabled. Your concern is not that he would be disadvantaged or have trouble articulating after he is in the midst of this mental health crisis with particularity on the form. Your concern is that it would be problematic for the VA if they had to actually look in his medical records, see that diagnosis, and recognize that as the claim if he were to say to you, I am seeking benefits for everything in my medical records. You're concerned with the burden on the VA at that point. What about the burden on the mentally disabled veteran who is seeking benefits? Yes, Your Honor. And we certainly understand that. And that's why there is a sympathetic and liberal construction doctrine, but there still has to be a claim here. And again, in Mr. Lacoste's case, he did not bring a claim, even a general statement of intent to seek benefits for a mental or psychiatric disorder. And the board actually did interpret his claims broadly in giving him an earlier effective date inextricably entwined with his Parkinson's disease. And although I believe Mr. Lacoste made the claim that he had received a diagnosis in 1972, the medical records themselves, although this is more of a factual question, are not clear that he received a diagnosis of a psychiatric disorder in 1972. In fact, I believe both his discharge examination and the examination he received after filing his claim put that his psychiatric and neurological findings were normal and that there was no diagnosis in the section marked for neurological and psychological findings. But again, here there is just no claim at all. So while the question of a general intent to seek benefits might be alive in a different case, it is not so here. And Mr. Lacoste provided no showing that he intended to seek a claim for psychiatric or mental benefits in 1972 through his claim  And again, the board recognized the correct standards in, again, finding an earlier service connection, or earlier effective date for his mood disorder in connection with his Parkinson's disease. Because in that case, even though, again, Mr. Lacoste had not specifically raised the claim, the examiner found and the board adopted the finding that the psychiatric and mood disorder was inextricably intertwined with the Parkinson's disease. And there is no reason to think that the board, having articulated all the correct standards, would have applied them one way or as related to the Parkinson's and another way as related to the ulcer claim. Can you tell me what is the document on page 422 of the appendix? Your Honor, I believe the document on page 422 of the appendix is part of his discharge medical records. They're dated 11 April, 72, and they preceded his claim by about several weeks, I think. And so I think these were part of it. So you just told us that his discharge records recognized no form of mental health disorder of any kind, yet there's a box checked for yes for nervous troubles. And I don't actually see any list anywhere for any specific mental health except for depression. I see depression. Apart from that, I don't see, is there, I mean, am I missing a line item somewhere for mental health disorders or mood disorders or something that could have been checked? Well, Your Honor, on appendix 425, which is that same report of medical examination and history with the same date on it, April 11, 1972, if you look at the column titled clinical evaluation, there's a list of various types of items, a few of which are marked abnormal, such as abdomen and feet. And then if you look at the bottom, there's a line for neurologic and psychiatric, which says specify any personality deviation. And both neurologic and psychiatric are marked normal as far as findings go. But am I correct in understanding the form the veteran filled out for identifying his issues at the time of discharge included nervous trouble? Yes, I believe that it was Mr. Lacoste that filled out that first couple pages. And was this attached to his claim? It is in series, looks like it was attached to his claim for benefits, but I can't tell for sure. I don't believe it was attached to his claim for benefits, but the VA did pull and examine these records in deciding his 1972 claim. And I think I asked your opposite number. Would he have seen the records that the RO was looking at before he decided whether to appeal or not? I can't claim for certain as to Mr. Lacoste personally, but I believe Mr. Adig was correct that it is not the general practice or was not the general practice to have shown the veteran these types of records in conjunction with his 1972 claim. Thank you, counsel. Thank you. We have your argument. Oh, sorry, Your Honor. We have your argument. Thank you, Your Honor. Mr. Adig, you have two minutes for rebuttal. Your Honor, I would point out that that document 422 not only mentions that Mr. Lacoste is having nervous trouble, but also mentions that he's taking Valium, which I don't know as of record the extent to which Valium affects somebody's mental health or mental state of mind, but it certainly suggests that a person does not have the full capacity to know what's going on. The idea that the BVA can sympathetically read the scope of a claim while looking only at a veteran's intent to claim a particular condition it seems that those two things cannot coexist. If the court limits the sympathetic reading of the scope of a claim to specific intent to claim a particular medical condition, then it's going to run afoul of a case like Schroeder where the veteran did not include all theories in his claim. And in fact, there were theories unknown to the veteran. And yet those are still supposed to be considered as part of the sympathetic construction. It will run contrary to Moody where the veteran in that particular case did not claim specifically a mental health condition in a claim seeking a prostate condition. Yet the court held that the BVA is supposed to sympathetically construe those pleadings. Limiting this to intent is going to specific intent to claim a particular medical condition is going to shift the burden to the veteran to identify his purpose. But at that level of specificity, I guess I am inclined to think that the Veterans Court didn't actually do that. That is the Veterans Court's decision is, as I read it, perfectly understandable as saying, tell us what you can be expected to know is which part of your body, including the mind and the brain in it, is bothersome. What the doctors call that and how is really, we don't expect you to say that. And so, but you didn't even do that here. I don't think that the Veterans Court could say that because they're not able to make factual determinations in the first instance. Certainly, they could review the board's determination of whether or not it did that. They didn't reach that because they said that Mr. Lacoste fails to demonstrate how evidence relating the ulcer and the mental health condition constitute intent to claim not a general class of benefits, but mental health conditions. We would ask this court to reverse the Veterans Court and to remand it to the board with instructions to specifically or sympathetically construe the scope of the 1972 claim. We would also ask the court to address the Veterans Court's decision in Brannon as to whether or not that's consistent with the sympathetic reading law. Thank you. Thank you, counsel. The case is submitted.